# United States Court of Appeals for the Federal Circuit

03-7105

ALBERT L. WILSON,

Claimant-Appellant,

v.

ANTHONY J. PRINCIPI,
Secretary of Veterans Affairs,

Respondent-Appellee.

Barton F. Stichman, National Veterans Legal Services Program, of Washington, DC, argued for claimant-appellant. With him on the brief were Nancy L. Foti and Louis J. George.

Edward P. Sullivan, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Kenneth D. Woodrow, Trial Attorney. Of counsel on the brief was Martin J. Sendek, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC. Of counsel were Franklin E. White, Jr., Assistant Director, and Kyle E. Chadwick, Attorney, Civil Division. Also of counsel was Michael J. Timinski, Department of Veterans Affairs.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Donald L. Ivers

# United States Court of Appeals for the Federal Circuit

03-7105

ALBERT L. WILSON,

Claimant-Appellant,

v.

ANTHONY J. PRINCIPI, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  December 3, 2004

_____

Before NEWMAN, <u>Circuit Judge</u>, PLAGER, <u>Senior Circuit Judge</u>, and CLEVENGER, <u>Circuit Judge</u>.

PLAGER, <u>Senior Circuit Judge</u>.

This case requires us to examine two sections of the Veterans Benefits Act of 2002 ("VBA"), and to determine whether, under section 402 of the Act, we have jurisdiction to decide the case before us, and whether, under section 403, the Court of Appeals for Veterans Claims properly decided the case before it.

The veteran in this case, Albert L. Wilson, seeks review of the decision of the Court of Appeals for Veterans Claims on his application for fees and expenses pursuant to the Equal Access to Justice Act ("EAJA").  The Court of Appeals for Veterans Claims granted his application, but awarded less than the amount he requested for the non-attorney practitioner who had worked on his case.  On appeal to this court, Mr. Wilson

argues that the Court of Appeals for Veterans Claims wrongly failed to consider the effect of section 403 of the VBA on such awards.

The Government contends that, because Mr. Wilson did not argue below that section 403 had any effect on his case, this court lacks jurisdiction to consider the matter, citing section 402 of the VBA. The Government further argues that, even if we have jurisdiction over the appeal, prudential considerations suggest that we should decline to address the section 403 issue.

We conclude that we have jurisdiction under section 402 to decide whether the Court of Appeals for Veterans Claims wrongly failed to apply the correct law as announced in section 403. We further conclude that in the exercise of our discretion we should entertain Mr. Wilson's appeal even though he did not raise the section 403 issue below. Because the Court of Appeals for Veterans Claims erred in its understanding of the applicable law, we vacate the judgment of the Court and remand for reconsideration of Mr. Wilson's EAJA award.

BACKGROUND

1.

The dates on which various events occurred are key to understanding the issue in the case. In April 2001 Mr. Wilson filed a claim with the Board of Veterans' Appeals ("Board") seeking an increase in his service-connected disability rating. The Board denied the claim, and Mr. Wilson appealed to the Court of Appeals for Veterans Claims. In September 2001, in response to a joint motion filed by the parties pointing out

administrative errors made by the Board, the Court of Appeals for Veterans Claims vacated the Board's decision and remanded for further proceedings.

Shortly thereafter Mr. Wilson filed with the Court of Appeals for Veterans Claims an application for an award of reasonable fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). He sought compensation for work by non-attorney practitioner James Stewart, who is admitted to practice before the Court of Appeals for Veterans Claims under that court's Rule 46(b)(1), and for work by supervising attorney Barton Stichman.[1] Mr. Wilson requested fees for Mr. Stewart's work at an hourly rate of

---

[1] Non-attorneys may practice before the Court of Appeals for Veterans Claims if they meet the requirements of Rule 46(b):

> (b) Admission of Nonattorney Practitioners to Practice. A nonattorney of good moral character and repute who is –
>
> (1) under the direct supervision (including presence at any oral argument) of an attorney admitted to the bar of the Court, or
> (2) employed by an organization which is chartered by Congress, is recognized by the Secretary of Veterans Affairs for claims representation, and provides a statement signed by the organization's chief executive officer certifying to the employee's –
>
> > (A) understanding of the procedures and jurisdiction of the Court and of the nature, scope, and standards of its judicial review; and
> > (B) proficiency to represent appellants before the Court
>
> may be admitted to practice before the Court upon filing with the Clerk a completed application accompanied by the applicable fee (payable by check or money order). In making the statement under this paragraph, the chief executive officer should be aware that knowledge of and competence in veterans law and the administrative claims process does not in and of itself connote competence in appellate practice and procedure.

Ct. App. Vet. Cl. R. 46(b). Mr. Stewart is admitted under subsection (b)(1) and was supervised by Mr. Stichman in this case.

$120; the EAJA application included affidavits indicating that was the prevailing market rate for litigation work done by a senior litigation paralegal with Mr. Stewart's knowledge and experience. Veterans in eight previous cases before the Court of Appeals for Veterans Claims had sought, and been awarded, $120 per hour for Mr. Stewart's work. The Secretary of Veterans Affairs ("Secretary"), the respondent in these claims cases, did not contest the EAJA applications in any of those eight cases. See Appellant's Br. at 10.

The Secretary responded to Mr. Wilson's application by acknowledging that Mr. Wilson satisfied the requirements for an EAJA award, but contested the $120 hourly rate requested for Mr. Stewart's work. The Secretary asserted that the appropriate hourly rate was $90, the market rate for work performed by paralegals and law clerks according to the scale the Department of Justice uses to calculate fees for cases in Washington, DC.

On December 6, 2002, sections 402 and 403 of the Veterans Benefits Act of 2002 became law. On December 12, 2002, six days after enactment of the VBA, a panel of the Court of Appeals for Veterans Claims granted Mr. Wilson's EAJA application. Wilson v. Principi, 16 Vet. App. 509 (2002). The court awarded fees for the work performed by non-attorney practitioner Mr. Stewart at the rate of $90 per hour. In explaining that $90 per hour was a reasonable rate, the majority analogized the work of a supervised non-attorney practitioner to that of a paralegal or law student supervised by an attorney, and refused to consider Mr. Stewart's extensive experience and expertise. Id. at 514-15. In dissent, Chief Judge Kramer stated that the appellant had presented significant evidence to demonstrate that the prevailing market rate for

services provided by a non-attorney practitioner with Mr. Stewart's experience exceeded $90 per hour. Id. at 516. In February 2003, the Court of Appeals for Veterans Claims denied Mr. Wilson's motion for reconsideration. Wilson v. Principi, 17 Vet. App. 19 (2003). Mr. Wilson timely filed a notice of appeal with this court in April 2003.

2.

While Mr. Wilson's EAJA application was wending its way through the system, the Court of Appeals for Veterans Claims had stayed proceedings in another EAJA application case in which the veteran, Mr. Abbey, had also requested fees for Mr. Stewart's work at the rate of $120 per hour. After issuing its initial decision in Mr. Wilson's case in December 2002, the court lifted the stay in the Abbey case and ordered the parties to submit briefing explaining why the prevailing market rate for Mr. Stewart's services should not be $90 per hour. After the parties filed their briefs, the court in May 2003 requested additional briefing on the effect of section 403 of the Veterans Benefits Act of 2002,[2] which as noted had been enacted on December 6, 2002, on the court's authority to award EAJA fees for the work of Mr. Stewart in that

---

[2]    Section 403 of the VBA provides:

> The authority of the United States Court of Appeals for Veterans Claims to award reasonable fees and expenses of attorneys under section 2412(d) of title 28, United States Code, shall include authority to award fees and expenses, in an amount determined appropriate by the United States Court of Appeals for Veterans Claims, of individuals admitted to practice before the Court as non-attorney practitioners under subsection (b) or (c) of Rule 46 of the Rules of Practice and Procedure of the United States Court of Appeals for Veterans Claims.

Pub. L. No. 107-330, § 403, 116 Stat. 2820, 2833 (2002).

case and the work of non-attorneys in general. <u>Abbey v. Principi</u>, 17 Vet. App. 75 (2003).

After receiving the parties' submissions, the Court of Appeals for Veterans Claims in September 2003 granted Mr. Abbey's EAJA application in full, including fees for work performed by Mr. Stewart at the rate of $120 per hour. <u>Abbey v. Principi</u>, 17 Vet. App. 282 (2003). The court simultaneously granted the EAJA application of another veteran who had used Mr. Stewart's services, again at the $120 hourly rate. <u>Pentecost v. Principi</u>, 17 Vet. App. 257 (2003). In both cases the court held that the enactment of section 403 of the VBA "requires a different outcome from that in <u>Wilson</u>." <u>Abbey</u>, 17 Vet. App. at 292; <u>Pentecost</u>, 17 Vet. App. at 260.

In <u>Abbey</u> and <u>Pentecost</u> the court interpreted section 403, which grants the Court of Appeals for Veterans Claims the "authority to award fees and expenses" of non-attorney practitioners "in an amount determined appropriate" by the court, as recognition of the unique role of non-attorney practitioners appearing before the court; the statute thus permits the court to consider a particular non-attorney practitioner's level of experience and expertise when determining a reasonable and appropriate fee. <u>Abbey</u>, 17 Vet. App. at 292; <u>Pentecost</u>, 17 Vet. App. at 260-61. Based on Mr. Stewart's experience representing over 200 appellants before the court after a twenty-five year career working for the Disabled American Veterans, the Court of Appeals for Veterans Claims readily approved fees for Mr. Stewart at the $120 hourly rate.

The Secretary did not appeal the <u>Abbey</u> and <u>Pentecost</u> decisions to this court. Relying on those decisions, the Court of Appeals for Veterans Claims has since awarded fees for Mr. Stewart's services at the $120 hourly rate in other cases, as

indicated in a number of nonprecedential opinions issued during the last year. <u>See</u> Appellant's Reply Br. Addendum. In many of those cases, as in <u>Abbey</u> and <u>Pentecost</u> and also in the case before us, Mr. Stewart's work was performed prior to the December 2002 enactment of the VBA. More recently, the Court of Appeals for Veterans Claims awarded fees for work performed by Mr. Stewart after the enactment of the VBA at the rate of $126.73 per hour, an increase over the previously approved $120 rate based on the change in the Consumer Price Index during the relevant time period. <u>Evington v. Principi</u>, 18 Vet. App. 331 (2004).

Because of the happenstance of the timing, the <u>Abbey</u> and <u>Pentecost</u> decisions had no effect on the EAJA fees awarded to Mr. Wilson, since by the time those cases were decided in September 2003 the Court of Appeals for Veterans Claims had already entered judgment in his case, and he had filed a notice of appeal with this court. After the appeal was filed, this court in June 2003 stayed the briefing schedule and directed Mr. Wilson to show cause why his appeal should not be dismissed for lack of jurisdiction. In August 2003, after reviewing the parties' submissions regarding jurisdiction, a judge of this court lifted the stay of the briefing schedule and deferred the issue of jurisdiction to the merits panel.

Then, shortly after the <u>Abbey</u> and <u>Pentecost</u> decisions issued in September, counsel for Mr. Wilson contacted Government counsel, offering to file with this court a joint motion to vacate the judgment below and remand for reconsideration in light of <u>Abbey</u> and <u>Pentecost</u>. Appellant's Br. at 21. That of course would have been a simple and straightforward solution to this timing dance, and would have afforded the Court of Appeals for Veterans Claims the opportunity to reconsider Mr. Wilson's case in light of

that court's later treatment of similarly situated claimants. According to Mr. Wilson, the Secretary rejected this offer. Id. The parties proceeded to file their appeal briefs, and the matter is now before us for decision.

## DISCUSSION

### 1. Section 402—Jurisdiction

Section 402 of the VBA amended 38 U.S.C. § 7292, which sets out the scope of this court's jurisdiction to review decisions of the Court of Appeals for Veterans Claims. The statute as amended provides in relevant part:

> (a) After a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of *a decision of the Court on a rule of law or of* any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision.
> . . .
> (d)(2) Except to the extent that an appeal under this chapter presents a constitutional issue, the Court of Appeals may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case.

38 U.S.C.A. § 7292 (West 2002 & Supp. 2004) (emphasis added).

The emphasized phrase was added to the statute by section 402 of the VBA. Under the statute before it was thus amended this court considered that its jurisdictional grant regarding review of decisions of the Court of Appeals for Veterans Claims was basically "issue jurisdiction." Forshey v. Principi, 284 F.3d 1335 (Fed. Cir. 2002) (en banc). This meant that, in general terms, if an issue was not presented to that court and in effect a part of the court's decision it was not subject to review on appeal to this court.

Several months after this court decided Forshey, Congress enacted the VBA, including both section 402 and section 403. While the full effect of the section 402 amendment to our jurisdictional statute has not been determined, we recently explained that it "means at least this much: in a case . . . in which the decision below regarding a governing rule of law would have been altered by adopting the position being urged, this court has jurisdiction to entertain the matter, even though the issue underlying the stated position was not 'relied on' by the [Court of Appeals for Veterans Claims]." Morgan v. Principi, 327 F.3d 1357, 1363 (Fed. Cir. 2003).

Mr. Wilson's principal argument on appeal is that if the Court of Appeals for Veterans Claims had considered section 403 of the VBA when it determined his EAJA award, as it later did in Abbey and Pentecost, the court would have approved the $120 hourly rate he requested for Mr. Stewart's services. Mr. Wilson recognizes that under § 7292(d)(2), set out above, we lack jurisdiction to review the ultimate conclusion as to the appropriate hourly rate because that review involves the application of law to facts. He contends, however, that we do have jurisdiction to decide as a matter of law whether the Court of Appeals for Veterans Claims wrongly failed to consider the VBA when addressing his EAJA application.

The Government argues, as it frequently does, that this court does not possess jurisdiction to entertain this appeal. The Government notes that the issue decided by the Court of Appeals for Veterans Claims with respect to Mr. Wilson's EAJA application was whether $90 or $120 was a reasonable rate for Mr. Stewart's work. Because resolution of that issue involves only a factual question or the application of law to facts, the Government contends that no aspect of the decision of the Court of Appeals for

Veterans Claims is reviewable. Alternatively, in the event we conclude that we have jurisdiction to consider Mr. Wilson's appeal, the Government urges us not to exercise our review authority as a matter of prudential consideration since the issue was not properly presented to the Court of Appeals for Veterans Claims.

At the time Mr. Wilson argued his case before the Court of Appeals for Veterans Claims, the VBA had not yet become law. Therefore it is not surprising that no issues concerning the validity or interpretation of section 403 of the VBA were raised by Mr. Wilson before the court, or discussed or implicated in that court's decision. Had this appeal been filed under the pre-VBA version of section 7292, it is likely that jurisdiction would not lie to address Mr. Wilson's main challenge to the decision below, i.e., that the court should have considered the effect of section 403 of the VBA on its authority to determine an appropriate EAJA rate for work performed by a non-attorney practitioner. See Forshey, 284 F.3d at 1338.

In Morgan we concluded that section 402 of the VBA added a new jurisdictional basis to our review statute—"rule of law" jurisdiction—under which we may review a decision with respect to a rule of law even though that rule of law was not "relied on" by the Court of Appeals for Veterans Claims. Morgan, 327 F.3d at 1361. We have interpreted the revised statute as conferring on this court a form of "case jurisdiction," as opposed to "issue jurisdiction." Id.

Even so, the Government contends that Mr. Wilson's appeal does not fall within this court's "rule of law" jurisdiction because it does not concern a *judicially* created rule of law. In Morgan, the question was whether equitable tolling came within the scope of our "rule of law" jurisdiction. Id. at 1363. Equitable tolling, of course, is a judge-made

doctrine and was specifically mentioned in the legislative history as an example of a "rule of law" that previously had not been subject to review by this court. Id. at 1362-63. We had no difficulty finding that review of the Morgan issue was within our new jurisdictional grant.

Though the issue in Morgan was a judge-made rule, nothing in our Morgan opinion restricted "rule of law" jurisdiction to legal principles developed solely by the courts. As we expressly stated in Morgan, examination of the full extent of the 2002 amendment to section 7292 would have to await further cases. Id. at 1364. We now hold that a "rule of law" within the meaning of 38 U.S.C. § 7292 as amended is not limited to those judicially created, but, as a simple matter of plain meaning, includes legislatively created law as well. The issue raised by Mr. Wilson—the applicability *vel non* of section 403 of the VBA to the determination of EAJA fees for non-attorney practitioners—is such a rule of law.

Thus the decision by the Court of Appeals for Veterans Claims in this case, in which the court failed to consider the impact of a law in effect at the time of its decision, is a "decision of the Court on a rule of law" within the meaning of 38 U.S.C. § 7292. We therefore conclude that this court has "rule of law" jurisdiction in this case to address whether the Court of Appeals for Veterans Claims wrongly failed to consider the effect of section 403 of the VBA on the court's authority to award EAJA fees for non-attorney practitioners.

2. Section 403—Applicable Law

When the Court of Appeals for Veterans Claims decided Mr. Wilson's case, it did not apply section 403 of the VBA, the law in effect at the time. The Court of Appeals for

Veterans Claims itself later acknowledged this error in <u>Abbey</u> and <u>Pentecost</u>, in which the court for the first time considered the effect of section 403 of the VBA.  See <u>Abbey</u>, 17 Vet. App. at 292 (stating that enactment of section 403 of the VBA "requires a different outcome from that in <u>Wilson</u>"); <u>Pentecost</u>, 17 Vet. App. at 260 (same).  This sudden change in course resulted in disparate treatment for identically situated veterans—those whose EAJA applications requested compensation for time expended by Mr. Stewart prior to enactment of the VBA and were filed prior to enactment of the VBA, but were ruled on by the Court of Appeals for Veterans Claims after the VBA became law.  The court denied the $120 hourly rate in those cases decided before its September 2003 decisions in <u>Abbey</u> and <u>Pentecost</u>, but awarded the $120 hourly rate in those cases decided thereafter.  The September 2003 date seems to have no legal significance, other than being the date when the court finally addressed the question of the applicability of section 403 to the EAJA awards.

The Government strongly urges us not to consider the merits of Mr. Wilson's appeal on two grounds.  First, according to the Government, Congress did not intend section 403 of the VBA to apply 'retroactively'; in the Government's view that section of the VBA does not apply to this case because the work performed by Mr. Stewart and the filing of Mr. Wilson's EAJA application predated enactment of the VBA.  And second, as a prudential matter, this court should not address issues that were not properly raised below.

'Retroactivity' is one of those troublesome concepts regarding which it is possible to find law supporting any position one wishes to defend.  As we explained in <u>Dyment v. Principi</u>, 287 F.3d 1377 (Fed. Cir. 2002), "the Supreme Court has held that a federal

statute will not be given retroactive effect unless Congress has made its contrary intention clear." Id. at 1385 (citing Landgraf v. USI Film Prods., 511 U.S. 244, 272-73 (1994)). The Supreme Court has also admonished that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 711 (1974); see also Bernklau v. Principi, 291 F.3d 795, 804 (Fed. Cir. 2002).

We need not engage all the perambulations attendant on the basic concept of retroactivity and its varied applications. It is enough to observe that the issue here is not one of whether an individual is being disadvantaged (or for that matter advantaged) by a claimed retroactivity of legislation not applicable at the time of the complained about conduct. The issue here is a different and narrower question: whether a statute governing a court's power can apply when the court addresses an issue which brings that power into play, even though the conduct raising the issue occurred earlier than the statute. Bradley would appear to decide that with a clear yes. Furthermore, the Abbey and Pentecost decisions by the Court of Appeals for Veterans Claims undercut the Government's objection. As noted, those two cases presented the same temporal scenario as the case before us. In ruling on the EAJA applications in those cases, the Court of Appeals for Veterans Claims must have concluded that section 403 applied to its power to make the decision at issue, even though the applications themselves had been filed prior to enactment of the VBA. The Government opted not to appeal Abbey and Pentecost to this court, and those cases are now the law of the Court of Appeals for Veterans Claims.

The second objection the Government raises to our addressing the merits of this case is that as a prudential matter this court should decline to consider issues not raised below. It is certainly true that the Supreme Court, though affirmatively acknowledging the power of courts of appeals to decide issues that were not directly raised below, cautioned that such instances should be exceptional. The Court stated that such instances should be based on "particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon . . . below." Hormel v. Helvering, 312 U.S. 552, 557 (1941). The matter is one left largely to the discretion of the court of appeals. Singleton v. Wulff, 428 U.S. 106, 121 (1976).

More recently, in Forshey we identified some of the circumstances in which we might wish to exercise our discretion to consider issues not raised below, particularly in the context of veterans claims cases. See 284 F.3d at 1353-58. Recognizing as we must that such circumstances must be carefully restricted, we mentioned four in which "we may consider such issues where it is appropriate to do so under all the circumstances." Id. at 1358.

The first of the Forshey examples is essentially on point. This is the circumstance when courts have an obligation to apply a new statute that becomes effective while an appeal is pending. In discussing this example, we again quoted from Bradley to the effect that a court is to apply the governing law at the time it renders its decision "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Id. at 1356. The Government, though arguing that there is no basis for an exception in this case, points to no such Congressional

direction. If, by application of this rule, this court on appeal should consider section 403 applicable to Mr. Wilson's case, *a fortiori* the Court of Appeals for Veterans Claims should have considered it since it was enacted not just while Mr. Wilson's appeal was pending before this court, but while his EAJA application was pending before that court in the first instance.

Under the circumstances presented by this case, in which there is a clear case of disparate treatment of similarly situated persons, circumstances which the Government could have resolved by agreeing to the requested remand, it behooves us in the exercise of our discretion as a matter of justice to address the question presented, i.e., whether the Court of Appeals for Veterans Claims should have taken section 403 of the VBA into account when it decided Mr. Wilson's EAJA petition. We conclude that, in light of that court's subsequent actions in other cases similarly situated, the answer must be yes. At the very least, that opportunity should be afforded the Court of Appeals for Veterans Claims.

Accordingly, we hold that the Court of Appeals for Veterans Claims wrongly failed to consider the effect of section 403 of the VBA on its determination of the appropriate fee for the non-attorney practitioner employed by Mr. Wilson. We vacate the decision below and remand for the Court of Appeals for Veterans Claims to reconsider the appropriate hourly rate for Mr. Stewart's time in light of that court's decisions in Abbey and Pentecost.

VACATED and REMANDED